UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEVIN P.[1],                                    Case No. 3:22-cv-51
    Plaintiff,                                    Litkovitz, M.J.

vs.

COMMISSIONER OF                           **ORDER**
SOCIAL SECURITY,
    Defendant.

Plaintiff Kevin P. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10) and the Commissioner's response in opposition (Doc. 11).

**I. Procedural Background**

On January 22, 2019, plaintiff protectively filed an application for DIB alleging disability beginning May 1, 2013, due to diabetes, hypopituitarism, hypogonadism, adrenal insufficiency, hypothyroidism, and pericardial effusion. (Tr. 142-43, 171). The application was denied initially and upon reconsideration in January 2020. Plaintiff, through counsel, requested and was granted a *de novo* hearing via telephone before administrative law judge ("ALJ") Stuart Adkins. On February 2, 2021, the ALJ issued a decision denying plaintiff's DIB application. (Tr. 12-27). This decision became the final decision of the Commissioner when the Appeals Council denied review on December 20, 2021.

---

[1] Pursuant to General Order 22-01 due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] last met the insured status requirements of the Social Security Act on September 30, 2019.
>
> 2. The [plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of May 1, 2013 through his date last insured of September 30, 2019 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the [plaintiff] had the following severe impairments: type 2 diabetes mellitus with long-term use of insulin, hypopituitarism after adenoma resection, hypogonadism, adrenal insufficiency, hypothyroidism, obstructive sleep apnea, chronic chest pain, morbid obesity, hypertension, cervical radiculopathy, bursitis of the right shoulder, hepatic steatosis, history of pericarditis, and pericardial effusion; migraines. (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, [the ALJ] finds that, through the date last insured, the [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [plaintiff] can lift and/or carry 20 lbs occasionally and 10 lbs frequently; can stand and/or walk for about 6 hours and sit for about 6 hours in an 8 hour workday; would be permitted to alternate between sitting and standing every 30 minutes while at the workstation; can never climb ladders ropes and scaffolds; can occasionally climb ramps and stairs and crawl; can frequently balance, stoop, kneel and crouch; can occasionally reach overhead with the right upper extremity; can have occasional exposure to extreme cold, extreme heat, dusts, odors, fumes and pulmonary irritants; should avoid unprotected heights, dangerous machinery and commercial driving.

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born [in] . . . 1970 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a)).[3]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from May 1, 2013, the alleged onset date, through September 30, 2019, the date last insured (20 CFR 404.1520(g)).

(Tr. 17-27).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __

---

[2] Plaintiff's past relevant work was a warehouse worker, an unskilled, medium exertion position; and a composite job of parts clerk, light and skilled and parts runner, medium and semi-skilled position. (Tr. 26, 50-51).
[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as a mail clerk (35,300 jobs nationally), storage facility rental clerk (82,600 jobs nationally), and routing clerk (97,750 jobs nationally). (Tr. 27, 52-54).

U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### D. Specific Error

In the sole assignment of error, plaintiff alleges the ALJ erred by failing to "fully consider essential vocational expert testimony in finding [plaintiff's] ability to perform light work." (Doc. 10 at PAGEID 1165). Plaintiff argues the ALJ erred in finding plaintiff could perform light exertional work because the residual functional capacity ("RFC") "included no restrictions based on off-task behavior, absences in the workplace, or additional breaks needed throughout the work day." (*Id.* at PAGEID 1167; *see also Id*. at PAGEID 1166).

The Commissioner argues that the ALJ's decision is supported by substantial evidence, and plaintiff failed to point to any specific evidence showing he is more limited than the ALJ's RFC finding. (Doc. 11).

The RFC assessment is an evaluation of the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). It is well-established that the ALJ determines a claimant's RFC. *See* 20 C.F.R. § 404.1545(a) ("We will assess your residual functional capacity

5

based on all the relevant evidence in your case record"); 20 C.F.R. § 404.1546(c) ("the administrative law judge . . . is responsible for assessing your residual functional capacity"); s*ee also Moore v. Astrue*, No. 07-204, 2008 WL 2051019, at *5 (E.D. Ky. May 12, 2008) ("[T]he ALJ is responsible for assessing a claimant's [RFC] by examining all the evidence in the record.") (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)); *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006).

Plaintiff argues the ALJ erred by "failing to address in his decision the additional issues and results of employment raised in his last hypotheticals that pertained to off-task behavior, monthly absences, and additional random breaks during the work day." (Doc. 10 at PAGEID 1167). Plaintiff contends the ALJ erred by not finding plaintiff met the work-preclusive limitations in one of the hypotheticals asked by the ALJ to the VE at the hearing, i.e., an individual needing to take two additional 15-minute breaks randomly throughout the day; being off-task for more than 15% of a work day; and needing to be absent from work three days per month.

In addition to testifying to representative jobs in the national economy that plaintiff could perform for an individual with the plaintiff's age, education, work experience, and residual functional capacity (Tr. 51-54), the VE testified being off task more than fifteen percent of the time would be "work preclusive," and being absent three days per month would violate "most employer's attendance policies" resulting in termination. (Tr. 55). The VE further testified that "unscheduled or additional rest breaks above and beyond whatever workers receive are typically not going to be provided. If they are provided, I would view that as accommodated work." (*Id.*).

The fact that the ALJ asked about the residual functional capacity of a hypothetical person with particular limitations does not mean the VE's answer is binding on the ALJ. "It is

6

well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421-22 (6th Cir. 2014) (quoting *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). Simply posing a hypothetical question to the VE does not result in a finding about a claimant's RFC or bind the ALJ where the medical record does not support the inclusion of such limitations. *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019)). *See also Aiello v. Comm'r of Soc. Sec.*, No. 1:19-cv-01558, 2020 WL 2526956, at *3 (N.D. Ohio May 18, 2020) (finding "the mere fact that the ALJ asked the VE about certain hypothetical limitations does not mean that the ALJ is then required to adopt them into the RFC") (citing *Sayler v. Comm'r of Soc. Sec.*, 574 F. App'x 595, 596 (6th Cir. 2014) (per curiam)).

Moreover, plaintiff cites no objective medical evidence in the record to establish he would be off-task for more than 15% of a work day, be absent from work more than three days per month, or need to take additional breaks throughout the workday. *See Miller v. Comm'r of Soc. Sec.*, No. 3:20-cv-506, 2021 WL 4745430, at *4 (S.D. Ohio Oct. 12, 2021) (Report and Recommendation), *adopted*, 2021 WL 5003452 (S.D. Ohio Oct. 27, 2021) (finding the plaintiff's argument that the "RFC should have included the work-preclusive restrictions of being off task and absent from work due to her impairments" without merit because "none of the record evidence cited by Plaintiff actually demonstrate[ed] that her impairments would cause her to be off task twenty percent of the time and miss two days of work a month"). Instead, plaintiff cites his own testimony at the hearing in support of his argument. (Doc. 10 at PAGEID 1167). Specifically, plaintiff states:

7

> Furthermore, [plaintiff] testified about getting worn out when he performs any kind of manual exertion around his home (Doc. #6-2 at 44; PageID #60).  If [plaintiff] is unable to perform simple activities of daily living for a period of 30-45 minutes, such as doing the dishes, it is apparent he does not have the functionality to perform successfully at any level of exertion.  (*Id*. at 47; PageID #63).  He is only able to stand on his feet for approximately 30-45 minutes and sleeps for approximately 5 hours per night.  Because he does not sleep well, it is presumable he does not withstand the proper amount of rest to function adequately.  Lastly, the medical record and [plaintiff's] testimony both reference the issue of migraine headaches occurring nearly 2-3 times per week.  When the onset of one begins, [plaintiff] requires laying down in a darkened area to help alleviate the pain.  In the event [plaintiff] has a migraine at work, it is likely he will partake in off-task behavior, absenteeism, or require additional breaks away from the work place.

(*Id*.).

Plaintiff's citation to his own testimony does not support a reversal of the ALJ's decision for two reasons.  First, the ALJ considered plaintiff's subjective allegations about his limitations and determined the symptoms plaintiff described were "not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 23).  Plaintiff does not challenge this finding on appeal, and the Court finds the ALJ's subjective symptom evaluation is supported by substantial evidence for the reasons cited by the ALJ.  (Tr. 23-25).

Second, and more importantly, no medical source of record opined that plaintiff's impairments would cause plaintiff to "partake in off-task behavior, absenteeism, or require additional breaks away from the work place."  (*Id*.).  Plaintiff fails to cite any medical records that endorse the work-preclusive restrictions he believes should have been included in the RFC.  *See Wendy D. H. v. Comm'r of Soc. Sec. Admin*., No. 3:20-cv-387, 2022 WL 621433, at *3 (S.D. Ohio Mar. 3, 2022).  The ALJ thoroughly examined the medical evidence of record and reasonably concluded that a "residual functional capacity for the reduced range of light work . . . takes into account the location, duration, frequency, and intensity of the claimant's alleged

8

symptoms, as well as precipitating and aggravating factors." (Tr. 24). Plaintiff has not cited any medical evidence calling into question the ALJ's conclusion in this regard.

To the extent plaintiff argues that his migraines would cause him to "partake in off-task behavior, absenteeism, or require additional beaks away from the work place" (Doc. 10 at PAGEID 1167), plaintiff fails to cite any objective medical evidence in the record, other than his own testimony, that would support these allegations. The ALJ comprehensively examined the record and acknowledged that plaintiff "alleged frequent headaches, but beyond his reports of headaches, he has not sought emergency room to other urgent intervention and he reported his headaches resolve when he can get into a dark and quiet room." (Tr. 23). Further, the ALJ reasonably found that "[n]o treating or examining source has reported that the claimant is disabled, nor has any source indicated he is limited significantly from a physical standpoint." (*Id*.).[4]

A disability claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512. The burden is on the claimant to furnish medical and other evidence about his impairments and the effects of his impairments on his ability to work. *Id*. Here, plaintiff has not shown that the ALJ erred by failing to include restrictions in the RFC for being off task, absent from work, or needing to take additional breaks.

---

[4] In a single sentence with no citation to any portion of the medical record, plaintiff also argues his "ongoing hormone replacement therapy in addition to having hypothyroidism . . . most definitely contribute to his chronic fatigue and yield towards the limitations involving excessive off-task behavior, monthly absenteeism, and needing to take at least two additional breaks during the work day." (Doc. 10 at PAGEID 1166). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). *See also Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument challenging an ALJ's non-disability determination amounts to a waiver of that argument). Plaintiff failed to develop this argument legally or factually, provide any analysis, or cite to any specific treatment notes or reasons as to why plaintiff believes the ALJ committed error. Therefore, any such argument is waived. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) (internal citations omitted) (emphasis added) (The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, *as well as arguments adverted to in only a perfunctory manner*, are waived").

9

Moreover, plaintiff points to no medical opinions that plaintiff's impairments result in off-task behaviors or absences from work. *See Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *8 (S.D. Ohio Aug. 26, 2020) ("Plaintiff has not pointed to any medical opinion evidence indicating that plaintiff's seizures were so frequent that he would be off task for fifteen percent of the workday or absent from work two days per month."). The ALJ thoroughly evaluated the medical evidence related to plaintiff's impairments and explained his reasons for including the functional restrictions related thereto in the RFC. (*See* Tr. 23-24). The ALJ stated:

> Having carefully considered the entire record, the undersigned finds that, through the date last insured of September 30, 2019, the claimant retained the ability to lift 20 pounds occasionally and 10 pounds frequently. The claimant has some examination evidence of right shoulder bursitis and cervical radiculopathy, but no evidence of incoordination, weakness, or other neurological deficit. In fact, he testified that he could lift 20-25 pounds, but not repeatedly. In light of the normal ejection fraction, catheterization results showing no evidence of hemodynamically significant coronary artery disease, the essentially normal physical examination evidence noted throughout the record, and the claimant's testimony, the undersigned finds the client limited to the lifting requirements of light work. The claimant exhibits no lower extremity or other weakness and exhibited a normal gait with intact coordination. He indicated that he needed to sit after standing for 30-45 minutes and that allegation is taken into account by allowing the sit-stand option as described. The record demonstrates no medical basis upon which to reduce balancing, stooping, crouching, or kneeling beyond frequent, however, in light of his allegations of fatigue and his medical history climbing stairs and/or ramps is limited to occasional. Climbing ladders, ropes, or scaffolds is precluded because those activities exceed the exertional demands of light work. The claimant has a recent history of cervical radiculopathy without effect on upper extremity strength or coordination, as well as right shoulder bursitis. The claimant reported difficulty reaching overhead, but beyond subjective complaints, there is no imaging evidence of a bony abnormality. As a result, and allowing some benefit of doubt to the claimant's allegations, the claimant cannot perform more than occasional overhead reaching on with the right upper extremity. In light of the claimant's history of pericardial effusion and with reports of shortness of breath at times, it is reasonable to reduce exposure to respiratory irritants. Accordingly, the claimant should not experience more than occasional exposure to extreme cold, extreme heat, dusts, odors, fumes, and pulmonary irritants. Finally, and as a precaution in light of his cardiac impairment and reported history of very infrequent episodes of dizziness, he should not be exposed to hazards, such as unprotected height or dangerous machinery, and he should not perform any commercial driving as part of job duties. Based on the above, the record supports no further functional restrictions.

10

(*Id*.).

Plaintiff has not shown that the evidence before the ALJ required the inclusion of greater limitations than those found by the ALJ. Nor has plaintiff shown the ALJ erred when he failed to rely on VE testimony that did not accurately reflect plaintiff's functional limitations. Plaintiff has not met his burden of proof to show the ALJ's decision is not supported by substantial evidence. Significantly, plaintiff has failed to show how the ALJ's RFC is not supported by substantial evidence in light of the fact that the ALJ's RFC includes more limitations than those opined by the medical opinions of record. (Tr. 25). Therefore, plaintiff's sole assignment of error is overruled.

### III. Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 10) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**. **IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 1/4/2023

Karen L. Litkovitz
Chief United States Magistrate Judge